UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Homeowners of America Insurance Company,<br><br>Plaintiff,<br>vs.<br><br>James Brauchle, Capital Adjusting Services, Adam Schwartz, Jonathan Schwartz, Wayne E. Dennis, and Rick Anderson,<br><br>Defendants. | Civil Action No. **2:22-cv-4603-RMG**<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

## COMPLAINT

Now comes the Plaintiff, Homeowners of America Insurance Company ("HOAIC"), by and through its attorneys, and for its Complaint for Declaratory Judgment against Defendants James Brauchle, Capital Adjusting Services, Adam Schwartz, Jonathan Schwartz, Wayne E. Dennis, and Rick Anderson (collectively "Defendants") alleges as follows:

### NATURE OF THE ACTION

1. This is an insurance coverage action for declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

2. HOAIC seeks a determination of the parties' rights and obligations under policy number 41-011828-02, for the period of November 18, 2021, to November 18, 2022 (the "Policy"), which was issued to James Brauchle (the "Named Insured"), for the property located at 1816 Shell Ring Circle, Mount Pleasant, South Carolina (the "Property" or "Building"). A true and correct copy of the Policy is attached here as Exhibit A.

1

3. A dispute exists regarding the compliance with the terms of the Policy regarding the appraisal process including qualifications of the appraisers, bias, and validity of the purported appraisal award resulting from the appraisal of the Property with respect to an alleged water loss occurrence on or about April 19, 2022.

HOAIC seeks a declaration that:

    a. The appraisal process was tainted by the improper conduct and misrepresentations of Defendant Adam Schwartz and Capital Adjusting Services;

    b. Defendant Adam Schwartz, Public Adjuster who was retained by the Named Insured, was not an uninterested party when acting as the Named Insured's appraiser during the appraisal process;

    c. Defendant Adam Schwartz does not meet the definition of "qualified" appraiser under the Policy because as the Public Adjuster he has a financial interest in the outcome of the appraisal;

    d. Defendant Adam Schwartz made material representations when he informed HOAIC that Defendant Jonathan Schwartz, who upon information and belief, is Defendant Adam Schwartz's brother or blood relative, would act as the Insured's "qualified appraiser", and then proceeded to act as the appraiser himself for several months;

    e. Defendant Adam Schwartz is not a "qualified' appraiser in this case and therefore had no authority to participate in, and make recommendations regarding selection of the umpire in this case and by so doing, Defendant Adam Schwartz invalidated the entire appraisal process;

    f.    Defendant Adam Schwartz cannot cure this breach by recommending that Defendant Rick Anderson act as his replacement half-way through the appraisal process;

    g.    The appraisal award that has been provided through this tainted process must be vacated and a new appraisal process started in compliance with the clear terms and conditions of the Policy, including those directly related to an appraisal;

    h.    A new "qualified" appraiser and "qualified" umpire must be selected to cure the tainted appraisal process and purported award; and

    i.    HOAIC has no duty to pay the purported appraisal award until the new appraisal process is completed in accordance with all the terms of the Policy by a "qualified" appraiser and a "qualified" umpire.

## PARTIES

4. Plaintiff HOAIC is a corporation formed and existing pursuant to the laws of Texas, with its principal place of business in Texas.

5. The Policy's dwelling limits are $ 750,000, and the Insured is seeking damages to recover in excess of Five Hundred and Fifty-Four Thousand Four Hundred and Twenty Dollars and Seventy-Four cents ($554,420.70).

6. Defendant James Brauchle is a resident of South Carolina and is the Named Insured under the Policy.

7. Upon information and belief, Defendant Capital Adjusting Services ("Defendant Capital"), is a corporation organized and existing under the laws of District of Columbia, and conducts business in South Carolina, including Charleston County.

8. Defendant Adam Schwartz ("Defendant A. Schwartz") is a resident of Florida. Upon information and belief, Defendant A. Schwartz is the owner and sole proprietor of Capital Adjusting Services, a company that provides public adjusting services in numerous states. Upon information and belief, Defendant A. Schwartz is the brother of Defendant Jonathan Schwartz.

9. Upon information and belief, Defendant Jonathan Schwartz ("Defendant J. Schwartz") is a resident of Florida. He was selected as the Appraiser by Defendant A. Schwartz. Upon information and belief, Defendant Jonathan Schwartz is the brother of Defendant Adam Schwartz.

10. Upon information and belief, Defendant Wayne E. Dennis ("Defendant Dennis") is a resident of Florida. He was the umpire selected by Defendant Adam Schwartz during the time when Defendant Adam Schwartz was working as both the Named Insured's Appraiser and Public Adjuster.

11. Upon information and belief, Defendant Rick Anderson ("Defendant Anderson") is a resident of Florida. Defendant Adam Schwartz recommended that Defendant Rick Anderson act as the replacement Appraiser for the Insured when it became apparent that Defendant Adam Schwartz was not a "qualified appraiser" under the clear terms of the Policy.

## JURISDICTION AND VENUE

12. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2201 and 1332 because there is complete diversity of citizenship between HOAIC, a Texas citizen, and the South Carolina Defendant (Brauchle), the Florida Defendants (A Schwartz, J. Schwartz, Dennis, and Anderson), and the District of Columbia Defendant (Capital), and the amount in controversy exceeds $75,000 exclusive of interest and costs.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Property for which insurance was purchased is located at 1816 Shell Ring Circle, Mount Pleasant, South Carolina, which is within the boundaries of the South Carolina District Court, Charleston Division. Venue is also proper in South Carolina District Court, because some of the Defendants reside or conduct business in South Carolina, and the Policy was delivered to Defendant Brauchle in South Carolina.

## BACKGROUND

14. On April 19, 2022, the Named Insured, Defendant Brauchle reported a claim to Plaintiff HOAIC regarding water damage to the Property due to a pipe that burst in the interior of the home.

15. On April 21, 2022, Plaintiff HOAIC's field adjuster went to inspect and evaluate the damages at the Property.

16. On May 16, 2022, Plaintiff HOAIC received a letter of representation from Defendant A. Schwartz with Capital Adjusting Services stating he would be managing the claim going forward on behalf of the Named Insured. *See* Exhibit B, LOR from Defendants A. Schwartz and Capital.

17. On May 17, 2022, HOAIC's field adjuster Jacob Ziegler contacted Defendant A. Schwartz to discuss the claim and schedule a re-inspection of the Property. The reinspection was rescheduled multiple times through no fault of the Plaintiff. The re-inspection was ultimately completed on June 14, 2022.

18. On June 17, 2022, HOAIC's field adjuster submitted a repair estimate for $101,051.76. *See* Exhibit C, Royal Adjusting Report.

19. On June 28, 2022, Defendant A. Schwartz sent correspondence to the Plaintiff HOAIC on behalf of the Named Insured stating the Named Insured did not agree with the Plaintiff's evaluation of the damages and requested an appraisal under the Policy and named Defendant J. Schwartz as the Insured's appraiser. *See* Exhibit D, June 28, 2022, Correspondence from Defendant A. Schwartz.

20. Upon information and belief, Defendant A. Schwartz and Defendant J. Schwartz are brothers.

21. Upon information and belief, Defendant J. Schwartz did not at any point, act as the Insured's Appraiser.

22. On July 6, 2022, Plaintiff HOAIC acknowledged the Insured's request for an appraisal and timely selected its appraiser, John Moore, and notified Defendant A. Schwartz of such selection. *See* Exhibit E, July 6, 2022, Correspondence from HOAIC.

23. The July 6, 2022, Correspondence from HOAIC thoroughly explained the appraisal process and Policy requirements of the Named Insured during the process. The letter further defined who could be considered a "qualified" appraiser in accordance with the definitions contained in the Policy. The letter described that the two "qualified" appraisers must select a "qualified" umpire. *See* Exhibit E.

24. On July 12, 2022, Defendant A. Schwartz, acting as the Named Insured's appraiser instead of the selected appraiser Defendant J. Schwartz, made two recommendations for the umpire selection to HOAIC's Appraiser John Moore. Defendant A. Schwartz recommended Defendant Dennis and Defendant Anderson as his "umpire" recommendations. *See* Exhibit F, Email Correspondence from Defendant A. Schwartz to John Moore.

6

25. On July 14, 2022, HOAIC's qualified appraiser, John Moore, and the Defendant A. Schwartz, acting as both the Named Insured's PA and the appraiser, signed a document titled Selection of Umpire that selected and appointed Defendant Dennis to act as umpire for this appraisal. *See* Exhibit G, Selection of Umpire.

26. On September 12, 2022, the same Selection of Umpire sheet was inappropriately changed to super-impose the signature of Defendant Anderson over that of Defendant A. Schwartz. In addition, the prior date of execution was crossed out and a date of September 12, 2022, was superimposed on the Selection Form. *See* Exhibit H, Edited Umpire Sheet.

27. On September 23, 2022, upon receipt of the two versions of the Selection of Umpire forms, Plaintiff HOAIC issued a Notice of Breach and Notice to Cure to Defendant Capital and Defendant A. Schwartz. The letter requested that the appraisal process be restarted because it was clear that Defendant A. Schwartz had inappropriately acted as both the Insured's Public Adjuster and Appraiser in violation of the Policy's terms and conditions.

28. In addition, Defendant A. Schwartz had improperly participated in the selection of the umpire when he was not qualified to do so and had communicated with the Umpire while acting as both the Public Adjuster and Appraiser for the Insured. Thus, the selection of Defendant Wade as "umpire" was invalid because Defendant A. Schwartz was not a disinterested person under the terms of the Policy. *See* Exhibit I, Notice to Cure letter.

29. Likewise, at that time, it had become apparent the Defendant A. Schwartz had misrepresented several material facts, including misrepresenting that Defendant J. Schwartz would be actin as the Appraiser for the Insured, had acted as the Appraiser for several months, and had been communicating with the Umpire while he was acting as both Public Adjuster and Appraiser for the Insured.

30. On October 11, 2022, the undersigned counsel on behalf of HOAIC sent a supplemental letter to the Named Insured, Defendant Capital, and Defendant A. Schwartz providing a second Notice of Breach and Notice to Cure detailing the improper actions taken by Defendant A. Schwartz and requesting that the appraisal process be restarted to cure the breach. *See* Exhibit J, October 11, 2022 Supplemental Correspondence Letter to Named Insured.

31. On October 26, 2022, Defendant Brauchle sent a letter in response asserting allegations of improper claims handling by the Plaintiff HOAIC and threatening a bad faith lawsuit. Defendant Brauchle did not agree to restart the appraisal process. *See* Exhibit K, October 26, 2022 Supplemental Correspondence Letter from Named Insured.

32. On November 1, 2022, the undersigned counsel on behalf of HOAIC sent a letter in response to the Named Insured's correspondence to Defendant Capital, Defendant A. Schwartz, and the Named Insured again, reiterating that Plaintiff HOAIC was requesting that the appraisal process be restarted in order to cure the improprieties perpetrated by Defendant A. Schwartz in violation of the Policy's terms and conditions. *See* Exhibit L, November 1, 2022- Correspondence Letter to Named Insured.

33. The Parties continued to communicate in an effort to resolve the issue of the tainted appraisal and the misrepresentations made by Defendant A. Schwartz.

34. While the Parties were continuing to explore possible resolution options, with full knowledge that HOAIC had requested that the process be restarted, on or about On November 15, 2022, an appraisal award was purportedly entered by the improperly selected umpire, Defendant Dennis, finding a replacement cost for the loss at the Property to total $566,440.57 and an actual cash value for the loss to total $554,420.70. HOAIC Appraiser John Moore did not sign off on this award. *See* Exhibit M, November 15, 2022 Appraisal Award.

8

35. Defendant Anderson, the alternate appraiser recommended by Defendant A. Schwartz to act as umpire and appraiser, signed off on the purported award.

## THE POLICY[1]

36. The HOAIC Policy provides, in part:

**DEFINITIONS**[2]

    **A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**THIS ENDORSEMENT CHANGES THE POLICY[3]. PLEASE READ IT CAREFULLY.**
**SPECIAL PROVISIONS – SOUTH CAROLINA**

**AGREEMENT** is deleted and replaced by the following:

In reliance on the information, you have given us, we agree to provide the insurance coverages indicated on the Policy Declarations. In return, you must pay the premium when due and comply with the policy terms and conditions and immediately inform us of any change of use or occupancy of the residence premises.

**C. Duties After Loss** is deleted and replaced by the following:
  **Duties After Loss**[4]

In case of a loss to covered property, we have no duty to provide coverage under this Policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, or an "insured" seeking coverage or a representative of either:

5. Cooperate with us in the investigation of a claim[5];

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value, and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require;

    a. Show the damaged property;

---

[1] *See* Exhibit A.
[2] Form HO 00 03 05 11, p. 1 of 24
[3] Form HA.SC.HO3SP (0820) pg. 1 of 14.
[4] *Id*. at pg. 7 of 14.
[5] *Id.* at pg. 8 of 14.

      b.      Provide us with records and documents we request and permit us to make copies; and

      c.      You, and "insured" and anyone you hired in connection with your claims must:

      (1) Submit to examinations under oath and recorded statements, while not in the presence of another "insured"; and

      (2) Sign the same.

      …

      e.      Representations made by any of the preceding persons who appear in examinations under oath or recorded statements will be deemed to be your representatives;

Paragraph **F. Appraisal** is deleted and replaced by the following:

**F. Appraisal**[6]

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a "**qualified**" appraiser and notify the other of the appraiser's identity within 15 days after receiving a written request from the other. The two appraisers will choose a "**qualified**" umpire. If they cannot agree upon an umpire within 15 days after notification of selection of the second appraiser, you or we may request that a "**qualified**" umpire be chosen by a district judge of a court of record in the county where the loss occurred. If suit is filed prior to the completion of the appraisal process, the court in which suit was filed retains exclusive jurisdiction to appoint the umpire. The appraisers or parties may agree to delay selection of an umpire until the appraisers have first attempted to reach agreement on the amount of the loss.

The two appraisers will separately set the amount of loss, stating the actual cash value and loss to each item. If the appraisers fail to agree, they will submit their differences to the umpire.

The umpire's work may only cover items about which the two appraisers disagree. The umpire must review the differences and seek agreement with one or both appraisers regarding the disputed items. The umpire must accept either appraiser's scope, quantities, values, or costs on items in dispute or may compromise between the two reports.

An itemized decision agreed to by any two of these three and filed with us will set the amount of loss. Such award shall be binding on you and us. Within thirty (30) days following receipt of a signed award, we will pay the award according to the terms of the Policy subject to the deductible less any prior payments on the claim

The following conditions apply to appraisal:

---

[6] Form HA.SC.HO3SP (0820) pg. 9 of 14. [emphasis added]

10

**1.** The term "**qualified**" means competent, independent, **impartial,** and **disinterested** appraiser or umpire. The appraisers and umpire should be competent with respect to identification of damage, and insofar as they are unbiased and free of control, to arrive at their own evaluation of the loss. The appraisers and umpire should have knowledge in identifying damage and act fairly, without bias, and in good faith. **The umpire, appraisers, and their employers, may not have an interest in the property that is the subject of the claim or <u>have a financial interest that is conditioned on the outcome of the appraisal or the claim</u>**. The umpire may not be a relative or employee, may not have made or received substantial referrals of business to or from you or us (or representatives of you or us). The umpire and appraisers must be one of the following and be licensed or certified as required by the applicable jurisdiction[7]:

    a. An engineer, architect, adjuster, or public adjuster with experience and training in investigation, estimating, and repair of the type of property damage in dispute;

    b. A building contractor with experience and training in building construction, repair, estimating, or investigation of the type of property damage in dispute.

2. By accepting appointment, the appraisers and umpire agree that if requested by you or us, they will:

    **a. Within 7 days after a request, disclose to you and us his or her qualifications, fee agreement, and any known facts which a reasonable person may consider to affect the appraiser's or umpire's independence, neutrality, or impartiality**;

    **b. Review any estimates, repair records, written statements, expert opinions, photos, and other pertinent information that you or we provide to the appraisers, umpire and each other; and**

    **c.** Personally inspect the property.

3. Each party will pay its own appraiser and bear the other expense of the appraisal and umpire equally. Any fees for expert witnesses or attorneys will be paid by the party who hires them.

4. Each party must be given at least 3 business days' advance written notice of the date, time, location, and identity of any judge who will be asked to choose an umpire. If such notice is not given, a judge's selection of an umpire at the request of one party who has not given such notice to the other party as described in this paragraph shall invalidate that selection and require selection of a new umpire either by agreement or by another judge after advance written notice as described in this paragraph.

5. You, we, and each of our representatives shall cooperate with the appraisal process, provide the appraisers and umpire with existing repair bids, estimates, invoices, receipts, expense records, inventories, and photos which are reasonably requested, and allow the appraisers and umpire rea- sonable and timely access to inspect the damaged property.

---

[7] *Id*. at pg. 10 of 14. [emphasis added]

6. Neither party waives the right to an appraisal if the request for appraisal is made within 90 days after an impasse is reached or a suit is filed over the amount of loss, whichever is later.

7. The appraisers and umpire are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, or any other contractual issues that may exist between you and us, and the appraisal decision is not binding on these issues.[8]

**FIRST CAUSE OF ACTION FOR DECLARATORY JUDGMENT**

37. Plaintiff incorporates the foregoing paragraphs as if they are repeated verbatim here.

38. Under South Carolina law, parties to an insurance contract have the right to litigate the question of whether an "award" rendered pursuant to an insurance policy's "appraisal provision" was the product of partiality, bias, fraud, collusion, inadequate investigation, lack of consultation, or improper motives, influences, conduct, or considerations. *See, e.g., L.D. Jennings Co. v. North River Ins. Co.*, 171 S.C. 548, 172 S.E. 700 (1934) *("Jennings I"), appeal after remand*, 175 S.C. 407, 179 S.E. 621 (1935) *("Jennings II"); Smith v. Home Ins. Co.*, 178 S.C. 436, 183 S.E. 166 (1934).

39. The Named Insured agreed to the terms of the insurance contract upon acceptance of the Policy.

40. The Named Insured retained Defendant A. Schwartz and Defendant Capital to act as his Public Adjuster and represent him with respect to this water loss claim. *See* Exhibit B, LOR.

41. Defendant A. Schwartz acting on behalf of the Named Insured signed the Umpire Selection form while acting as both the Public Adjuster **and** as the Named Insured's appraiser,

---

[8] Form HA.SC.HO3SP (0820) pg. 9 of 14. [emphasis added]

knowing that he had a financial interest in the processing of this claim that would disqualify him from serving as the "qualified" appraiser. *See* Exhibit G, Selection of Umpire.

42. Defendant A. Schwartz then tried to replace his name with Defendant Anderson's name several months after he had participated in the selection of the Umpire, and likely had communicated with the Umpire regarding the appraisal process. *See* Exhibit H, Edited Umpire Sheet.

43. Defendants A. Schwartz, Capital, and Brauchle repeatedly refused to restart the appraisal process, cure the breach, and comply with the terms of the Policy.

44. The Policy clearly defines in detail the term "qualified" as meaning a competent, independent, impartial, and disinterested appraiser and umpire. *See* Exhibit A.

45. The Policy unambiguously states that the umpire, appraisers, and their employers, may not have an interest in the property that is the subject of the claim or have a financial interest that is conditioned on the outcome of the appraisal or the claim. *Id.*

46. Defendant A. Schwartz has a financial interest that is conditioned on the outcome of the appraisal and therefore does not meet the requirements necessary to be a "qualified" appraiser.

47. Any actions taken by Defendant A. Schwartz in the appraisal process, including his selection of Defendant Dennis as umpire tainted the whole appraisal process and therefore the appraisal process must be restarted.

48. Defendants A. Schwartz and J. Schwartz misrepresented their roles in the appraisal process and intended for HOAIC to believe and rely on the representation that Defendant J. Schwartz would be acting as the Insured's appraiser.

13

49. HOAIC relied on the written notification from Defendant A. Schwartz indicating that Defendant J. Schwartz would be acting as the Appraiser in this case.

50. HOAIC is informed and believes Defendant A. Schwartz knew that his actions were improper and intended to mislead HOAIC with respect to the true identities, financial interests, and inter-dependent relationships of the persons named by Defendant A. Schwartz for purposes of misleading HOAIC for his and his cronies/Company's financial gain.

51. HOAIC is informed and believes that Defendant A. Schwartz acted with an improper motive when he acted as the Named Insured's appraiser after he had provided HOAIC with his brother's name, Defendant J. Schwartz, as the selected appraiser.

52. Due to the improprieties of Defendant A. Schwartz the appraisal award must be vacated and a new appraisal process must be allowed to proceed as expeditiously as possible, free of the misrepresentations and improper use of relatives and/or cronies, and/or Defendant A. Schwartz' participation as both Public Adjuster and Appraiser for the same Insured in the same loss evaluation.

53. Plaintiff HOAIC seeks a declaration that it does not owe the Named Insured any payment for this appraisal award based on the fact that it was obtained through impartial and improper means.

**WHEREFORE,** HOAIC requests that this Court enter a judgment in its favor and against Defendants and declare that Defendant A. Schwartz is not a "qualified" appraiser under the Policy; that Defendant J. Schwartz did not act as Appraiser nor was he a "qualified" appraiser under the Policy; that Defendant A. Schwartz could not participate in the selection of the Umpire because he was not a "qualified" appraiser with authority to select a "qualified" umpire; that due to the misrepresentations and tainted process, the appraisal process must be

restarted with a new "qualified" appraiser and new "qualified" umpire; and that the purported November 15, 2022 appraisal award be vacated. Further, HOAIC requests recovery of costs, attorney's fees as permitted, and any other relief the Court deems just and proper.

    Respectfully submitted,

    **RESNICK & LOUIS, P.C.**

    *s/Nosizi Ralephata*
    Nosizi Ralephata, Esq. (Fed. Bar No. 09685)
    Alicia Bolyard, Esq. (Fed. Bar No. 13196)
    146 Fairchild Street, Suite 130
    Charleston, South Carolina 29492
    nralephata@rlattorneys.com
    abolyard@rlattorneys.com
    *Attorneys for Homeowners of America Insurance Company*

December 20, 2022

Charleston, South Carolina